**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE LEE GOODMAN TRUST, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHEELS UP EXPERIENCE INC., KENNETH DICHTER, and TODD SMITH,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff The Lee Goodman Trust ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Wheels Up Experience Inc. ("Wheels Up" or the "Company"), and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Wheels Up securities between November 9, 2022 and March 31, 2023, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Wheels Up securities during the Class Period and was economically damaged thereby.

7. Defendant Wheels Up Experience Inc. provides private aviation services in the United States. The company offers membership programs, charter, aircraft management, whole aircraft sales, and commercial travel services. It also provides freight, safety, and security solutions, as well as managed services. The company serves individuals, industry, government, and civil organizations.

8. Defendant Wheels Up is incorporated in Delaware and its principal office is located at 601 West 26th Street, Suite 900, New York, New York, 10001. Wheels Up Experience Inc. securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "UP."

9. Defendant Kenneth Dichter ("Dichter") has served as the Company's Founder and Chief Executive Officer ("CEO") since 2013.

10. Defendant Todd Smith ("Smith") has served as the Company's Chief Financial Officer ("CFO") since June 2022.

11. Defendants Dichter and Smith are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

3

  (c) was privy to confidential proprietary information concerning the Company and its business and operations;

  (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

  (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

  (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

  (g) approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Wheels Up under *respondeat superior* and agency principles.

15. Defendant Wheels Up and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements Issued During the Class Period

16. On November 9, 2022, after market hours, the Company issued a press release announcing its unaudited third quarter financial results, which ended September 30, 2022, on Form 8-K. The unaudited third quarter financial results revealed the Company reported a net loss of $86,838,000 three months ended September 30, 2022 and $268,637,000 nine months ended

September 30, 2022. The Company also reported goodwill of $521,847,000 and accumulated deficit of $988,964,000 ended September 30, 2022.

17.     That same day, the Company filed with the SEC its third quarter report on Form 10-Q for the quarter ended September 30, 2022 (the "3Q22 Report"). Attached to the 3Q22 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Dichter and Smith attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     The 3Q22 Report revealed substantively the same numbers as referenced in ¶16 regarding the Company's net loss, goodwill and accumulated deficit.

19.     The 3Q22 Report failed to identify any material weaknesses regarding the Company's internal controls by stating the following, in relevant part:

> ***ITEM 4. CONTROLS AND PROCEDURES***
>
> ***Evaluation of Disclosure Controls and Procedures***
>
> As required by Rule 13a-15(b) under the Exchange Act, our management, including our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of the end of the period covered by this Quarterly Report. Based upon that evaluation, ***our Chief Executive Officer and Chief Financial Officer concluded that, as of the end of the period covered by this Quarterly Report, our disclosure controls and procedures are effective at a reasonable assurance level.***
>
> ***Changes in Internal Control over Financial Reporting***
>
> ***[T]here were no changes in our internal control over financial reporting during the quarter ended September 30, 2022, which were identified in connection with management's evaluation required by paragraph (d) of Rule 13a-15 and 15d-15 under the Exchange Act, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

20. On March 9, 2023, before market hours, the Company issued a press release announcing its unaudited fourth quarter financial results, which ended December 31, 2022, on Form 8-K. The unaudited fourth quarter financial results revealed the Company reported a net loss of $238,910,000 three months ended December 31, 2022 and $507,547,000 twelve months ended December 31, 2022. The Company also reported goodwill of $396,118,000 and impairment of goodwill of $132,000,000 ended December 31, 2022.

21. The statements contained in ¶¶ 16-20 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Wheels Up failed to address any material weaknesses with internal controls; (2) Wheels Up's financial statements from September 30, 2022 to the present included "certain errors" such as understating net loss and overstating goodwill; (3) as a result, Wheels Up would need to restate its previously filed financial statements for certain periods; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

22. Then on March 17, 2023, after market hours, the Company issued a Notification of Late Filing on Form 12b-25 regarding its Annual Report on Form 10-K for the year ended December 31, 2022 (the "2022 Annual Report"). The late filing form stated the following, in relevant part:

> ***The Company experienced unanticipated delays in compiling certain necessary information to complete its audited financial statements and prepare a complete filing of its Annual Report in a timely manner without unreasonable effort or expense.***

6

The Company anticipates that the Annual Report will be filed as soon as practicable and prior to the fifteenth calendar day following the prescribed due date.

(Emphasis added.)

23. On this news, Wheels Up's share price fell $0.027 per share, or 3.28%, to close at $0.7970 per share on March 20, 2023, the next trading day.

24. Then on March 31, 2023, after market hours, the Company filed an 8-K/A with the SEC announcing it would restate its financial statements from September 30, 2022 to the present, and expected to report at least one material weakness. The 8-K/A states in relevant part:

**Item 2.02 Results of Operations and Financial Condition.**

The Company is filing this Amendment No. 1 to the Original Filings to reflect adjustments to the presentation of the Company's unaudited financial statements and reconciliations of Net loss to Adjusted EBITDA, in each case contained in the Original 3Q Press Release and the Original 4Q Press Release and incorporated by reference into the Original 3Q Filing and the Original 4Q Filing, respectively. *In connection with the preparation of the audited financial statements to be included in the Annual Report on Form 10-K, the Company determined that non-cash goodwill impairment charges of (i) $62.0 million should have been recognized by the Company during the three months ended September 30, 2022, based on the Company's reassessment of the fair value of the legacy Wheels Up reporting unit (excluding Air Partner) ("WUP Legacy") as of September 30, 2022, and (ii) $118.0 million should have been recognized by the Company during the three months ended December 31, 2022 [and $180 million for the twelve months ended December 31, 2022], based on the assessment of the fair value of WUP Legacy as of December 31, 2022, in each case that were necessary to reflect the diminished fair value of WUP Legacy as of the applicable measurement dates.*

*The recognition of non-cash goodwill impairment charges of $62.0 million for the three months ended September 30, 2022 and $118.0 million for the three months ended December 31, 2022 resulted in the following changes to the Company's unaudited condensed consolidated financial statements set forth in the Original Press Releases:*

- *For the three and nine months ended September 30, 2022, the Company recognized a charge for "Impairment of goodwill" of $62.0 million in the Company's unaudited condensed consolidated statements of operations, which resulted in:*

- o *a $62.0 million increase to the Company's Net loss for the three and nine months ended September 30, 2022 versus the previously reported financial results;*
- o *a revised Net loss of $148.8 million, or $0.61 per share, for the three months ended September 30, 2022, and $330.6 million, or $1.35 per share, for the nine months ended September 30, 2022; and*
- o *corresponding adjustments, and associated impacts of the adjustments, to:*
    - *the balances of the "Goodwill" [of $459,847,000] and "Accumulated deficit" [of $1,050,964,000] line items in the Company's unaudited condensed consolidated balance sheets as of September 30, 2022;*
    - *the balances of "Net loss" and "Impairment of goodwill" in the Company's unaudited condensed consolidated statements of cash flows for the nine months ended September 30, 2022; and*
    - *the balances of "Net loss" and "Impairment of goodwill" and the "Impairment of goodwill" reconciling item in the Company's reconciliations of Net loss to Adjusted EBITDA for the three and nine months ended September 30, 2022.*
- *For the three months ended December 31, 2022, the Company decreased the charge for "Impairment of goodwill" by $14.0 million in the Company's unaudited condensed consolidated statements of operations versus what was reported in the Original 4Q Press Release, which resulted in:*
    - o *a $14.0 million decrease to the Company's Net loss for the three months ended December 31, 2022 and, taking into account the impact of the non-cash goodwill impairment charge for the three months ended September 30, 2022, a $48 million increase to the Company's Net loss for the year ended December 31, 2022, in each case versus the previously reported financial results;*
    - o *a revised Net loss of $224.9 million, or $0.91 per share, for the three months ended December 31, 2022, and $555.5 million, or $2.26 per share, for the year ended December 31, 2022; and*
    - o *corresponding adjustments, and associated impacts of the adjustments, to the following items, in each case in the same manner described with respect to the "Impairment of goodwill" charge recognized during the three and nine months ended September 30, 2022 above:*
        - *the Company's unaudited condensed consolidated balance sheets as of December 31, 2022;*
        - *the unaudited condensed consolidated statements of cash flows for the year ended December 31, 2022; and*

8

- ▪ *the reconciliations of Net loss to Adjusted EBITDA for the three months and year ended December 31, 2022.*
- The adjustments did not impact the Company's Adjusted EBITDA results for the three and nine months ended September 30, 2022 or the three months and year ended December 31, 2022.

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

(a)   On March 27, 2023, the Company, on the recommendation of the Audit Committee of the Company's Board of Directors*, concluded that the Prior Financial Statements should no longer be relied upon. This determination resulted from the identification of an error in the Prior Financial Statements, which resulted in a non-cash goodwill impairment charge related to WUP Legacy for the three months ended September 30, 2022 that is described in Item 2.02 of this Amendment No. 1.*
*The Company has assessed the materiality of this error in accordance with applicable SEC rules, and has concluded that the Prior Financial Statements should be restated.* The Company intends to include the restated Prior Financial Statements in an amended Quarterly Report on Form 10-Q/A (the "Amended Quarterly Report") to be imminently filed with the SEC. As a result of the restatement of the Prior Financial Statements and the Amended Quarterly Report, *management has determined that a material weakness existed in the Company's internal control over financial reporting related to the financial statement close process for the three months ended September 30, 2022.*

(Emphasis added.)

25.     That same day, the Company filed with the SEC a restatement on Form 10-Q/A for the 3Q22 Report. Attached to the Amended Quarterly Report were SOX certifications signed by Defendants Dichter and Smith attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The Amended Quarterly Report revealed the Company reported substantively the same numbers as referenced in ¶24 regarding the Company's net loss, goodwill, impairment of goodwill, and accumulated deficit.

26.     The Amended Quarterly Report revealed material weaknesses regarding the Company's internal controls by stating the following, in relevant part:

9

**ITEM 4. CONTROLS AND PROCEDURES**

*Evaluation of Disclosure Controls and Procedures*

As required by Rule 13a-15(b) under the Exchange Act, our management, including our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of the end of the period covered by this Form 10-Q/A.

***At the time of the Original 10-Q Filing, management, including our Chief Executive Officer and Chief Financial Officer, initially concluded that our disclosure controls and procedures were effective as of September 30, 2022. As a result of the restatement of the Company's financial statements and the material weakness identified below, management has reconsidered its assessment and now concludes that we did not maintain effective disclosure controls and procedures.***

*Management's Report on Internal Control over Financial Reporting*

***In connection with the preparation of the audited financial statements to be included in the Annual Report on Form 10-K, management identified a material weakness in certain internal controls over financial reporting related to the financial statement close process. The deficiency resulted in a restatement of the Company's unaudited condensed consolidated financial statements as of and for the three and nine months ended September 30, 2022 to recognize a non-cash goodwill impairment charge which should have been recognized during the three months ended September 30, 2022, which resulted in the understatement of Net loss for the three and nine months ended September 30, 2022. The Company filed a Quarterly Report on Form 10-Q/A with the SEC on March 31, 2023 to restate the unaudited condensed consolidated financial statements as of and for the three and nine months ended September 30, 2022.*** The Company's remediation plan will be described in the Company's Annual Report on Form 10-K for the year ended December 31, 2022.

(Emphasis added.)

27. That same day, the Company issued filed with the SEC its 2022 Annual Report on Form 10-K for the year ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were SOX certifications signed by Defendants Dichter and Smith attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2022 Annual Report revealed the Company reported substantively the same numbers as referenced in ¶24 regarding the

10

Company's net loss, and impairment of goodwill.

28. The 2022 Annual Report revealed material weaknesses regarding the Company's internal controls by stating the following, in relevant part:

**ITEM 9A. CONTROLS AND PROCEDURES**

*Evaluation of Disclosure Controls and Procedures*

*As required by Rule 13a-15(b) under the Exchange Act, our management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of the period covered by this Annual Report. Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were not effective as of December 31, 2022 due to material weaknesses in our internal control over financial reporting described below.* In light of this fact, our management has performed additional analyses, reconciliations, and other post-closing procedures and has concluded that, notwithstanding the material weaknesses in our internal control over financial reporting, the consolidated financial statements for the periods covered by and included in this Annual Report fairly present, in all material respects, our financial position, results of operations and cash flows for the periods presented in conformity with generally accepted accounting principles in the United States of America ("GAAP").

*Management's Annual Report on Internal Control over Financial Reporting*

Management assessed the effectiveness of our internal control over financial reporting as of December 31, 2022 based on the criteria described in Internal Control—Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). *Based on this assessment, management, including the Company's Chief Executive Officer and Chief Financial Officer, concluded that our internal control over financial reporting was not effective as of December 31, 2022 due to control deficiencies that, when aggregated, resulted in the material weaknesses described below, which are defined as a deficiency, or a combination of control deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.*

*We did not maintain effective controls over information technology ("IT") for IT systems and applications that are relevant to the preparation of the consolidated financial statements. Specifically, we identified deficiencies in (i) user access controls to ensure appropriate segregation of duties, (ii) controls that restrict user access to financial applications, programs and data affecting underlying*

> *accounting records, and (iii) program change management controls affecting IT applications and underlying accounting records, that ensure IT program and data changes are identified, tested, authorized and implemented properly.* None of the IT deficiencies resulted in a material misstatement to our annual or interim consolidated financial statements for the year ended December 31, 2022.
>
> *We did not maintain effective controls over the financial statement close and key business processes. Specifically, we did not consistently execute on our established accounting policies and procedures, and did not design, document and maintain controls to achieve complete, accurate and timely financial accounting, reporting and disclosures in accordance with GAAP. These include controls over account reconciliations, segregation of duties, review of journal entries and review of complex accounting matters. This deficiency resulted in a restatement of our unaudited condensed consolidated financial statements for the quarter and year-to-date period ended September 30, 2022.*

(Emphasis added.)

29. On this news, Wheels Up's share price fell $0.072 per share, or 11.37%, to close at $0.5610 per share on April 3, 2023, the next trading day, damaging investors.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

14

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

38. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

15

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

44. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

45. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

46. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

47. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

48. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

49. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

52.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

53.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

54.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 19, 2023

/s/Phillip Kim
**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*