UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
THE LEE GOODMAN TRUST, Individually and :
on behalf of all others similarly situated,

                                      :

                  Plaintiff,       :

                                        :               **MEMORANDUM**

      -against-            :              **AND ORDER**

                                        :

WHEELS UP EXPERIENCE INC., KENNETH  :      23 Civ. 2900 (OEM) (VMS)
DICHTER, and TODD SMITH,         :

                                        :

               Defendants.    :

                                        :

------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff The Lee Goodman Trust brought this action against Defendants Wheels Up Experience Inc. ("Wheels Up" or the "Company"), Kenneth Dichter and Todd Smith on behalf of itself and all other similarly situated persons or entities who purchased or otherwise acquired publicly traded Wheels Up securities between November 9, 2022 and March 31, 2023 (the "Class Period"), alleging violations of the Securities Exchange Act of 1934 (the "Securities Exchange Act"). See ECF No. 1. Before the Court are David Buttross, Scott Schleicher and Benjamin Sajour's respective motions for appointment of lead plaintiff and selection of lead counsel under the procedures set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See ECF Nos. 9, 12 and 13. For the following reasons, the Court grants Mr. Schleicher's motion and denies Mr. Buttross and Mr. Sajour's motions.

1

## I. Alleged Facts[1] and Procedural History

Defendant Wheels Up provides private aviation services and offers membership programs, charter services, aircraft management, aircraft sales and commercial travel services. See ECF No. 1 ¶ 7. Wheels Up securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "UP." See id. ¶ 8. In November 2022 and March 2023, Wheels Up issued press releases and filed reports with the SEC regarding its third- and fourth-quarter 2022 financial results. See id. ¶¶ 16-20. Plaintiff alleges that the statements in the press releases and reports were materially false and misleading, in that they, inter alia, misrepresented or omitted "material weaknesses with internal controls," understated net losses, and overstated goodwill. See id. ¶ 21. On March 17, 2023, Wheels Up "issued a Notification of Late Filing on Form 12b-25 regarding its Annual Report on Form 10-K for the year ended December 31, 2022." See id. ¶ 22. On March 31, 2023, Wheels Up "filed an 8-K/A with the SEC announcing it would restate its financial statements from September 30, 2022 to the present, and expected to report at least one material weakness." See id. ¶ 24. Plaintiff alleges that these acts caused the Company's share price to fall, damaging investors who, like Plaintiff, purchased Wheels Up securities during the Class Period. See id. ¶ 29.

On April 19, 2023, Plaintiff initiated this action and Plaintiff's counsel published notice of the action in Business Wire. See ECF Nos. 1 and 14-1. On June 20, 2023, putative class members David Buttross, Scott Schleicher and Benjamin Sajour each filed motions for appointment of lead plaintiff and selection of lead counsel. See ECF Nos. 9, 12 and 13. Mr. Sajour filed a notice of non-opposition to the competing motions, acknowledging that he does

---

[1] The alleged facts are derived from the Complaint and are deemed true only for the purposes of the motions before the Court.

not appear to have the largest financial interest in the relief sought.  <u>See</u> ECF No. 17.  Mr. Buttross and Mr. Schleicher each filed oppositions to all other competing motions and replies in support of their own motions.  <u>See</u> ECF Nos. 18-21.

## II. Legal Standards

The PSLRA sets forth the requirements for appointment of a lead plaintiff in a private securities action.  Within 20 days of the complaint's filing, the plaintiff must publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3)(A)(i).  The Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that (1) filed the complaint or moved to be appointed as lead plaintiff, (2) has the largest financial interest in the action and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.  <u>See</u> 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

"The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest' and neither the Supreme Court nor the Second Circuit has articulated such a method."  <u>May v. Barclays PLC</u>, No. 23 Civ. 2583 (LJL), 2023 WL 5950689, at *7 (S.D.N.Y. Sept. 13, 2023) (internal quotation marks & citation omitted).  Courts in the Second Circuit typically consider four factors, known as the <u>Olsten</u> factors, to evaluate financial interest: "(1)

3

the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996); see Skeels v. Piedmont Lithium Inc., No. 21 Civ. 4161 (LDH) (PK), 2022 WL 1236797, at *2 (E.D.N.Y. Feb. 4, 2022); In re Gentiva Sec. Litig., 281 F.R.D. 108, 112 (E.D.N.Y. 2012); Kuriakose v. Fed. Home Loan Mortg. Co., No. 08 Civ. 7281 (JFK), 2008 WL 4974839, at *3 (S.D.N.Y. Nov. 24, 2008).

The fourth factor, the approximate losses suffered, is "by far the most important." City of Sunrise Firefighter's Pension Fund v. Citigroup Inc., No. 20 Civ. 10360 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021); see Bosch v. Credit Suisse Grp. AG, No. 22 Civ. 2477 (ENV), 2022 WL 4285377, at *3 (E.D.N.Y. Sept. 12, 2022) ("Most crucial to the Court's determination is the fourth factor—the approximate financial loss suffered."); In re CMED Sec. Litig., No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at *3 (S.D.N.Y. Apr. 2, 2012) ("In giving weight to the four factors, courts in this District, as others, 'place the most emphasis on the last of the four factors: the approximate losses suffered by the movant' above any weight accorded to net shares purchased and net expenditures.") (quoting City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc., 269 F.R.D. 291, 294 (S.D.N.Y. 2010)). "Courts tend to treat the factors in ascending order of importance, with the number of shares purchased as the least important and the size of the loss the most important." Cortina v. Anavex Life Scis. Corp., No. 15 Civ. 10162 (JMF), 2016 WL 1337305, at *1 (S.D.N.Y. Apr. 5, 2016).

Because of the importance placed on the fourth factor, a movant who suffered the greatest loss by a substantial percentage is likely to have the largest financial interest, even if the other three factors favor another movant. See Maeshiro v. Yatsen Holding Ltd., No. 22 Civ.

4

8165 (JPC) (BCM), 2023 WL 4684106, at *5 (S.D.N.Y. July 21, 2023) ("when courts rely on Lax/Olsten factors other than the largest financial loss, it is typically because the LIFO losses among competing movants are roughly equivalent") (internal quotation marks omitted); Atanasio v. Tenaris S.A., 331 F.R.D. 21, 28 (E.D.N.Y. 2019) (finding movant who suffered the largest loss by 33% to have the largest financial interest, even though another movant had purchased significantly more shares and expended significantly more funds); Richman v. Goldman Sachs Grp., Inc., 274 F.R.D. 473, 478-79 (S.D.N.Y. 2011) ("The Court rejects the Institutional Investors Group's argument that the loss factor can be ignored and that it should be selected based on their larger net shares purchased and net expenditures.  Certainly, these factors have to be considered, but they are not dispositive in themselves.  Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.").  By contrast, if a movant suffers the largest loss by only a small percentage, the first three factors carry more weight.  See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc., No. 06 Civ. 5797 (PAC), 2007 WL 7952453, at *2 (S.D.N.Y. 2007) (appointing as lead plaintiff a movant whose losses were approximately 2% smaller than the losses of another movant based on the other three factors).

After identifying the movant with the largest financial interest in the action, the next step is to "ensure that the [movant] with the largest financial interest 'otherwise satisfies the requirements of Rule 23.'" Maliarov v. Eros Int'l PLC, No. 15 Civ. 8956 (AJN), 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)).  The Court "considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." Chitturi v. Kingold Jewelry, Inc., No. 20 Civ. 2886 (LDH) (SJB), 2020 WL 8225336, at *5 (E.D.N.Y. Dec. 22,

5

2020). "To establish typicality under Rule 23(a)(3), the party [] must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Id. at 35 (citing Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)); Hom v. Vale, S.A., No. 15 Civ. 9539 (GHW), 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016).

"[I]f the court is satisfied that there is a presumptively adequate lead plaintiff, the court may then determine whether this presumption has been rebutted 'upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff —(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" Somogyi v. Organogenesis Holdings Inc., 623 F. Supp. 3d 24, 29 (E.D.N.Y. 2022) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

The PSLRA also requires that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." See 18 U.S.C. § 77z-1(a)(3)(B)(v). Courts defer to a plaintiff's selection of counsel "and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." Xiangdong Chen v. X. Fin., No. 19 Civ. 6908 (KAM) (SJB), 2020 WL 2478643, at *5 (E.D.N.Y. May 13, 2020) (quoting Bray v. Frontier Commc'ns Corp., No. 17 Civ. 1617 (VAB), 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018)).

6

### III. Application

#### a.  Notice and Timely Filing

Counsel for Mr. Schleicher, The Rosen Law Firm, P.A., published notice of the action in Business Wire on April 19, 2023, the same day the Complaint was filed.  See ECF Nos. 1 and 14-1.  All three movants timely moved for appointment as lead plaintiff pursuant to the PSLRA. See ECF Nos. 9, 12 and 13.

#### b.  Largest Financial Interest

Mr. Schleicher argues that he has the largest financial interest in the action because he had the largest losses during the Class Period, which is the most important Olsten factor.  See ECF No. 14 at 3-4.  Mr. Buttross argues that he has the largest financial interest because he "prevails on three of the four [Olsten] factors," i.e., he has the largest gross shares purchased, net shares purchased, and net expenditures during the Class Period.

Mr. Schleicher claims that, during the Class Period, he purchased 13,710 of Wheels Up stock shares, made a net expenditure of $135,624.66 and suffered $82,800.03 in losses.  See ECF No. 14 at 4; ECF No. 14-3.  Mr. Buttross claims that he purchased 492,582 gross shares and 240,843 net shares, made a net expenditure of  $175,327 and suffered $48,530.08 in losses.  See ECF No. 19 at 3; ECF No. 11-3.  Mr. Sajour claims that he suffered $16,916.04 in losses, see ECF No. 15 at 7, and concedes that he does not have the largest financial interest, see ECF No. 17 at 1.  Mr. Schleicher's losses are approximately 70.6% greater than Mr. Buttross's losses. Because Mr. Schleicher suffered the most losses by a large percentage, the first three Olsten factors carry less weight.  See Maeshiro, 2023 WL 4684106, at *5; Atanasio, 331 F.R.D. at 28. Therefore, although Mr. Buttross purchased more shares and made a larger net expenditure than

Mr. Schleicher, these factors do not outweigh Mr. Schleicher's significantly greater losses by percentage.

The cases on which Mr. Buttross relies do not compel a different finding.  Mr. Buttross cites Police & Fire Ret. Sys., 2007 WL 7952453, at *2, in which the court held that the first three factors outweighed a "small difference" in loss.  The non-prevailing movant in Police & Fire Ret. Sys. suffered a loss that was only 2% greater than that of the prevailing movant, and the case is therefore distinguishable.  The out-of-circuit cases Mr. Buttross cites are no more persuasive.  Mr. Buttross cites City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc., No. 17 Civ. 1958 (DCN), 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017), in which the court held that a movant who suffered an approximately 87% larger loss than another movant did not have the largest financial interest because the first three factors outweighed the loss.  In City of Hollywood, however, the movant who suffered the largest loss "sold out its position" in the defendants' stock during the class period, unlike Mr. Schleicher, who did not.  See City of Hollywood, 2017 WL 6028213, at *1.  Moreover, City of Hollywood and the other out-of-circuit cases Mr. Buttross cites—see In re Network Assocs., Inc., Sec. Litig., 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999); In re Critical Path, Inc. Sec. Litig., 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001); Pio v. Gen. Motors Co., No. 14 Civ. 11191, 2014 WL 5421230, at *4, *5 (E.D. Mich. Oct. 24, 2014)—do not align with Second Circuit cases attributing the most weight to the fourth factor, particularly where the difference in financial loss is significant.  See, e.g., Maeshiro, 2023 WL 4684106, at *5; Atanasio, 331 F.R.D. at 28; Richman, 274 F.R.D. at 478-79.

Accordingly, the Court finds that Mr. Schleicher has the greatest financial interest in the action.

### c.  Rule 23 Considerations

The next step is to ensure that Mr. Schleicher otherwise satisfies the requirements of Rule 23.  See Maliarov, 2016 WL 1367246, at *5.  There is no dispute that Mr. Schleicher's claims arise out of the same alleged violations of the Securities Exchange Act as the other class members' claims.  Adequacy is also satisfied.  Mr. Schleicher has a significant financial interest in the outcome of the litigation, as he has alleged a substantial loss.  Mr. Schleicher's interests are not antagonistic to the other class members' interests, and there is no conflict between Mr. Schleicher and the members of the class.  See In re Flag Telecom Holdings, 574 F.3d at 35; Hom, 2016 WL 880201, at *6.  The proposed counsel, The Rosen Law Firm, P.A., is qualified and able to conduct the litigation.  See Firm Biography, ECF No. 14-4.  Accordingly, Mr. Schleicher satisfies Rule 23's requirements.

### d.  Rebuttal Evidence

No movant has offered rebuttal evidence showing that Mr. Schleicher "will not fairly and adequately protect the interests of the class" or that he is "subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### e.  Selection of Lead Counsel

Mr. Schleicher has selected The Rosen Law Firm, P.A., as lead counsel.  Mr. Schleicher has submitted a firm biography showing the firm's extensive experience litigating securities fraud class actions.  See ECF No. 14-4.  No purported class members have offered any reason why The Rosen Law Firm, P.A. would be ill-equipped to serve as lead counsel in this case.  Other courts in this Circuit have appointed The Rosen Law Firm in other securities class actions.  See, e.g., Sanchez v. Arrival SA, No. 22 Civ. 172 (DG), 2022 WL 20539729, at *9 (E.D.N.Y. Apr. 15, 2022); Lavin v. Virgin Galactic Holdings, Inc., No. 21 Civ. 3070 (ARR) (TAM), 2021

9

WL 5409798, at *8 (E.D.N.Y. Sept. 17, 2021); Chitturi v. Kingold Jewelry, Inc., No. 20 Civ. 2886 (LDH) (SJB), 2020 WL 8225336, at *7 (E.D.N.Y. Dec. 22, 2020).  The Court finds that The Rosen Law Firm, P.A. will adequately protect the interests of the class and therefore defers to Mr. Schleicher's selection.  See Xiangdong Chen, 2020 WL 2478643, at *5.  The Rosen Law Firm, P.A. is approved as Lead Counsel.

## IV.  Conclusion

For the foregoing reasons, the Court grants Mr. Schleicher's motion, appoints Mr. Schleicher as Lead Plaintiff and approves Mr. Schleicher's selection of The Rosen Law Firm, P.A. as Lead Counsel.  The Court denies Mr. Buttross and Mr. Sajour's competing motions.

Dated: Brooklyn, New York
       December 12, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge