**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE LEE GOODMAN TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>      v.<br><br>WHEELS UP EXPERIENCE INC., KENNETH DICHTER, AND TOD SMITH,<br><br>              Defendants. | No. 1:23-cv-02900 (OEM)(VMS) |

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 4

III.    ARGUMENT ...................................................................................................... 9

        A.      Standard Of Review ................................................................................ 9

        B.      The Complaint Adequately Pleads Falsity ........................................... 10

                1.      The Company's 3Q22 Financial Statements Were Materially False ........ 10

                2.      Even if This Court Ignores the Restatement, the Complaint
                        Adequately Pleads the Falsity of Wheels Up's 3Q22 Financial
                        Statements and the Statement of Fact that there Were No
                        Triggering Events .............................................................................. 13

                3.      The "Internal Controls" Statement is Adequately Alleged as False ......... 14

        C.      The Complaint Adequately Pleads Scienter ........................................... 15

        D.      The Complaint Adequately Pleads Loss Causation ............................... 21

        E.      The Complaint Adequately Pleads a Section 20(a) Violation ............... 24

IV.     CONCLUSION ................................................................................................ 26

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arora v. HDFC Bank Ltd.*,
   671 F. Supp. 3d 305 (E.D.N.Y. 2023) ................................................................................ 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 9

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014) .............................................................................................. 23

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996) .............................................................................................. 17

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012) ................................................................................................ 24

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   928 F. Supp. 2d 705 (S.D.N.Y. 2013) ............................................................................... 23

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011) ...............................................................................................11

*Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017) ................................................................................11

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) .......................................................................... 22, 24

In *Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) ................................................................................................ 19

*In re Aceto Corp. Sec. Litig.*,
   2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) ................................................................11, 12

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................... 24, 25

*In re Century Aluminum Co. Sec. Litig.*,
   749 F. Supp. 2d 964 (N.D. Cal. 2010) ............................................................................... 22

*In re Gen. Elec. Sec. Litig.*,
    2020 WL 2306434 (S.D.N.Y. May 7, 2020) ........................................................11, 20

*In re Initial Pub. Offering Sec. Litig.*,
    383 F. Supp. 2d 566 (S.D.N.Y. 2005) .......................................................... 9

*In re Lottery.com, Inc. Sec. Litig.*,
    2024 WL 454298 (S.D.N.Y. Feb. 6, 2024) ........................................................2, 11

*In re Metawave Commc'ns Corp. Sec. Litig.*,
    629 F. Supp. 2d 1207 (W.D. Wash. 2009).................................................. 22

*In re NIO, Inc. Sec. Litig.*,
    2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021)............................................. 9

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ....................................................... 22

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010) ....................................................... 23

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ...................................................................... 21

*IWA Forest Indus. Pension Plan v. Textron Inc.*,
    14 F.4th 141 (2d Cir. 2021)....................................................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)..................................................................... 10

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
    708 F. Supp. 2d 334 (S.D.N.Y. 2010) ....................................................... 23

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008)..................................................................... 19

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
    80 F.4th 158 (2d Cir. 2023)....................................................................... 14

*No. 12 Pension Fund v. Swiss Reinsurance Co.*,
    753 F. Supp. 2d 166 (S.D.N.Y. 2010) ....................................................... 17

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ...................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)................................................................................... 13

*S.E.C. v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996) .............................................................................................. 24

*S.E.C. v. Frank*,
388 F.2d 486 (2d Cir. 1968) ................................................................................................ 16

*S.E.C. v. Roor*,
2004 WL 1933578 (S.D.N.Y. Aug. 30, 2004) ................................................................... 16

*Setzer v. Omega Healthcare Invs., Inc.*,
968 F.3d 204 (2d Cir. 2020) ................................................................................................ 15

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
545 F. Supp. 3d 120 (S.D.N.Y. 2021) ................................................................................. 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007).............................................................................................................. 15

*Tenney v. Credit Suisse First Boston Corp.*,
2006 WL 1423785 (2d Cir. May 19, 2006)........................................................................... 9

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................................... 25

## I.    INTRODUCTION

Having written down goodwill for its legacy unit for 4Q22 by $132 million on March 9, 2023, Defendants quickly revised what should have been its audited annual results for 2022 on March 31, 2023. In fact, Defendants disclosed, the 2022 impairment charge—that directly and materially increased the Company's net loss—was $180 million. More, Defendants disclosed that the Company's financial statements for 3Q22[1] were materially false because, contrary to their statements at the time, the Company should have impaired the goodwill from its legacy business by $62 million as of September 30, 2022.

When Wheels Up[2] told investors on November 9, 2022, that there were no triggering events as of September 30, 2022, that would require performance of a quantitative analysis, investors had no reason to doubt either the non-existence of triggering events or the veracity of Defendants' statements. Just three months earlier, as of June 1, 2022, Defendants had performed an interim goodwill impairment analysis, identified stock price decline and declining operating margins as a triggering event, and performed a quantitative goodwill analysis that showed no need to impair goodwill for the Company's legacy unit. When Defendants finally disclosed the truth on March 31, 2023, restating 3Q22 financials, taking a $62 million goodwill impairment, and admitting that triggering events were present as of September 30, 2022, Wheels Up's stock price fell sharply, damaging investors.

---

[1] "2Q22 10-Q" refers to the August 11, 2022, quarterly report for the period ended June 30, 2022. "3Q22 10-Q" refers to the November 9, 2022, quarterly report for the period ended September 30, 2022. "2021 10-K" refers to the annual report for the fiscal year ended December 31, 2021. "2Q22" refers to the second quarter of fiscal year 2022. "3Q22" refers to the third quarter of fiscal year 2022. "4Q22" refers to the fourth quarter of fiscal year 2022. "3Q22 financial statements" refers to the financial statements as of September 30, 2022, filed with the SEC on November 9, 2022.

[2] "Wheels Up" or "Company" refers to Defendant Wheels Up Experience Inc. ¶_." refers to paragraphs in the Complaint. "DBr _" refers to pages in Defendants' motion to dismiss the Complaint. "DEx _" refers to exhibits attached to Defendants' motion to dismiss.

1

The Complaint adequately pleads securities fraud with particularity. Through the restatement, Defendants admit that the Company's September 30, 2022 financial statements were materially false, overstating the value of goodwill and understating Wheels Up's net loss for 3Q22. *See In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at \*22 (S.D.N.Y. Feb. 6, 2024) (the mere fact that financial results were restated is sufficient basis for pleading that those [financial] statements were false when made). Disclosing the restatement, Defendants further admitted that their November 9, 2022, statement that no triggering factors existed requiring a quantitative analysis as of September 30, 2022, was materially false. Triggering factors existed that should have caused them to perform a quantitative evaluation of the value of the legacy unit's goodwill. Defendants also admit that their 3Q22 certification of the adequacy of the Company's internal controls was false because weaknesses existed as of September 30, 2022.

Hiding from the clear ramifications of their admissions—Wheels Up's 3Q22 financial statements were materially false at the time Defendants disclosed them—Defendants ignore their restatement, relying principally on cases that involve no restatement, thus involving no admission that the defendants were aware or recklessly disregarded facts that should have caused them to impair in an earlier period. This case is wholly different.

Defendants' restatement admits that as of the date for the restated financial statements, circumstances existed that should have caused Defendants to impair goodwill at a time in the past, here as of September 30, 2022. Regardless of whether goodwill is an "opinion," hard facts underly when to conduct the two-step analysis. Defendants' restatement admits that the hard facts—declining stock price—of which they were aware, should have caused them to conduct a quantitative test as of September 30, 2022. They admit, too, that hard facts—materially rising interest rates—materially altered inputs to the discounted cash flow analysis they should have

2

deployed to evaluate the value of the legacy unit's goodwill. In turn, that should have caused them to materially impair the Company's goodwill and to increase the net loss it suffered in 3Q22. Because Defendants have admitted the material falsity of the Company's 3Q22 financial statements, the Complaint adequately pleads material falsity.

With some additions, these same facts—Defendants' admissions—establish the adequacy of the Complaint's allegations of scienter. A complaint adequately pleads scienter if it pleads with particularity a cogent and at least as compelling an inference of recklessness as any counter-inference. Here, the Court will evaluate whether Defendants recklessly failed to impair goodwill and consequently materially understated the Company's net loss. The same admissions that show falsity establish at least an equally compelling inference of their fraudulent intent.

Defendants knew exactly when and how to examine qualitative events to determine whether to perform a quantitative analysis of the value of Wheels Up's goodwill. Indeed, in the face of similar circumstances—declining operating margins and stock price—Defendants performed an interim goodwill impairment analysis as of June 1, 2022. Defendants admit that they examined for qualitative events as of September 30, 2022. They knew that Wheels Up's stock price continued declining in 3Q22. They knew that operating margins had flattened. They knew that interest rates—a key input to their discounted cash flow analysis—rose materially from their June 2022 goodwill impairment evaluation. Defendants' own disclosures establish their competence. They tacitly suggest, however, that this Court find the counter-inference that their incompetence resulted in their materially false statements. In the face of these allegations, however, it is cogent and at least as compelling that Defendants acted recklessly. As such, this Court should find that the Complaint adequately pleads scienter.

3

Finally, the Complaint adequately pleads loss causation. Though never required, the March 31, 2023, correction was a "mirror image" of the false statements that caused a stock price decline upon disclosure. Defendants admit that the November 9, 2022 published financials were false, they admit that their statement of no triggering events in 3Q22 was false, and admit that their statement of effective internal controls was false when issued. When they disclosed these admissions, the stock price fell. The Complaint adequately pleads loss causation.

The Court should deny Defendants' motion to dismiss in its entirety.

## II.     STATEMENT OF FACTS

Wheels Up, founded by Defendant Dichter in 2013, ¶24,[3] was an "on demand" private aviation company with a membership model. ¶24. In 2021 Wheels merged with a Special Purpose Acquisition Company ("SPAC"). The combined shares of the new company, called Wheels Up, began trading on the NYSE in July 2021. ¶¶22-23.

In April 2022, Wheels Up purchased Air Partner PLC. ¶25. As of the closing date, Wheels Up established Air Partner, with operations outside the United States, and its Wheels Up legacy business, with operations inside the United States, as two separate reporting units for the purpose of testing goodwill for impairment. ¶¶26, 35, 53. In January 2020 Wheels Up had purchased Delta Private Jets, and assigned its goodwill to Wheels Up's legacy reporting unit. ¶27.

Defendants applied Generally Accepted Accounting Principle ("GAAP") ASC 350-20 to accounting and financial reporting of goodwill. ¶¶45. From its going public in July 2021 through the start of the Class Period, Wheels Up and its executives demonstrated their understanding of the goodwill evaluation and impairment process, and the necessity of sometimes performing interim goodwill impairment analysis. GAAP contains a non-exclusive list of "triggering

---

[3] Defendants Dichter and Smith signed and certified all relevant Forms 10-Q and 10-K during the Class Period. ¶¶13-14.

4

events," ¶¶38-39, which includes declining cash flows, a sustained decrease in share price, both absolutely and relative to peers, negative margins, and a decline in market capitalization below book value. ¶¶38-39. All of these factors are considered in an evaluation of whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount. ¶40.

A goodwill impairment test consists of a qualitative and quantitative assessment. ¶40. If "triggering events" are found in the qualitative test, a company performs the quantitative analysis. ¶¶40-41. A company is required to perform a goodwill impairment test every year on the same date. Wheels Up conducted its required testing on October 1 of each year. ¶36. If a company finds the possibility of triggering events at other points during the year, it is required to perform an interim impairment analysis. ¶¶37-45. If, in the qualitative analysis, a company concludes that it is more likely than not that the fair value is below the carrying amount, and triggering events exist, it must perform the quantitative analysis. ¶¶41-43.

Defendants were well-versed in goodwill impairment analyses practices. They publicly disclosed their policies. ¶49. They stated that during a quantitative analysis they determine the fair value of each reporting unit using a discounted cash flow ("DCF") analysis, also known as an income approach. ¶¶39, 58. Further, they stated, quantitative assessments like DCF were sensitive to, among other things, increases in interest rates. ¶¶49-50. Defendants admit they monitored closely the metrics they discussed, including discount rates, rising interest rates, negative margins, and, of course, Wheels Up's stock price. ¶¶3, 50, 78.

Defendants performed required goodwill analyses as of October 1, 2019, October 1, 2020, and October 1, 2021. ¶51. During the October 1, 2020, qualitative analysis, Defendants found triggering events brought about by the COVID-19 crisis, and a quantitative analysis was performed using estimated future DCF, but Defendants took no impairment to the legacy

5

reporting unit. ¶51. In addition, interim goodwill impairment tests were performed as of April 30, 2020, and December 15, 2021. Defendants determined that a triggering event exited as of the latter date, specifically a sustained decrease in share price and decline in margins, though no impairment was taken. ¶¶51-52.

Wheels Up's share price continued to decline in 2022 through June 1, 2022. Defendants determined this to be a triggering event, and performed a quantitative goodwill impairment analysis of its legacy reporting unit as of June 1, 2022, based on a DCF analysis, which did not result in goodwill impairment. ¶¶56-57.[4]

Starting in March 2022, and through 3Q22 the Federal Reserve began rapidly increasing interest rates, from 0% on March 16, 2022, all the way up to 5.50% on July 26, 2023. ¶61. Between the June 1, 2022 interim goodwill impairment analysis, and September 30, 2022, the interest rate more than tripled. ¶62. Having disclosed their knowledge of triggering events and their use of a DCF analysis, Defendants were aware of these interest rate increases. ¶63.

During 3Q22, the circumstances that led Wheels Up to perform a quantitative goodwill impairment analysis as of June 1, 2022, persisted. Wheels Up suffered continued stock price decline, at a rate far worse than the broader industry decline. ¶65. Between June 1, 2022, and September 30, 2022, Wheels Up's stock price declined by 56%, far worse than the 38% drop from December 15, 2021 through June 1, 2022, a drop that caused Wheels Up to perform a quantitative analysis. ¶66. As a result of the stock price decline, Wheels Up's market capitalization dropped almost 41% during 3Q22, more than doubling the gap between the

---

[4] The use of a DCF analysis to determine the present value of future cash flows means that Defendants' inputs, including future operating margins, discount rates, and cost of capital, are unknown to investors, who thus cannot recreate Defendants' goodwill impairment analysis. ¶¶58 & n.6, 64.

carrying value of the Company's equity and its market capitalization. ¶67. Further, Wheels Up's operating margins remained negative and relatively flat, more than -21%, during 3Q22. ¶70.

In the November 9, 2022, 3Q22 10-Q, despite knowing about both the stock price decline and continued negative operating margins, which, in Defendants' own analysis, mandated performing a quantitative goodwill impairment analysis as of June 1, 2022, ¶73, as well as the increased interest rates which affected the DCF, Defendants announced that as of September 30, 2022, they observed no "triggering events." ¶73.[5] Defendants further disclosed in the 3Q22 10-Q that its internal control over financial reporting was effective as of September 30, 2022. ¶92. The 3Q22 10-Q included financial statements announcing an approximately $86 million net loss in 3Q22, and approximately $268 million for the first nine months of fiscal year 2022. ¶88.

On March 9, 2023, before the market opened, Defendants filed a Form 8-K and a press release, announcing Wheels Up's 4Q22 financial results, including a net loss of approximately $507 million for fiscal year 2022, and a goodwill impairment of $132 million, attributable entirely to 4Q22. ¶94. Defendants did not recognize the full $180 million goodwill impairment they would disclose in Wheels Up's restated 3Q22 10-Q/A. The Company overstated goodwill and total equity by $48 million, and understated net loss by $48 million. ¶95. On this news Wheels Up's stock price fell 10.4% on August 9, 2023, from $11.50 to $10.30. ¶96.

GAAP provision ASC 250 governs accounting for errors, including restatements. ¶82. Restatements arise from "misuse of facts that existed at the time the financial statements were prepared." ¶82. When an error is material, the reporting entity is required to alert users not to rely on the false earlier financial statements. ¶86. In restating its 3Q22 financial results, Defendants

---

[5] Defendants announced that they tested goodwill for "recoverability," the wrong test. This test is reserved for long-lived assets, not goodwill. ¶¶74-75.

acknowledged that the errors were material. ¶¶87, 100. A restatement is thus an admission that the restated financial statements were materially false when issued.

On March 31, 2023, after trading closed, Wheels Up filed a Form 8-K/A announcing that it would restate its 3Q22 financial statements, as well as the financial statements issued on March 9, 2023. ¶99. The Company announced that it expected to report at least one material weakness in internal control. ¶99. The filing admitted the material falsity of the restated financial results.

The 8-K/A announced that a $62 million goodwill impairment charge should have been taken in the 3Q22 10-Q, and $118 million goodwill impairment in 4Q22. ¶99. Because of the restatement, in addition to the 3Q22 $62 million goodwill impairment, the Company's restatement recognized an additional $62 million in 3Q22 net loss, or $0.61 loss per share. ¶99. With the restatement, the total goodwill impairment in 3Q22 and 4Q22 rose by $48 million, from $132 million to $180 million. ¶99.

That same day, March 31, 2023, Wheels Up filed its amended, restated 3Q22 10-Q/A, reflecting the goodwill impairment and its impact on the 3Q22 financial results. ¶101. With respect to goodwill impairment, Defendants stated in the 3Q22 10-Q/A that the continued decline in Wheels Up's stock price mandated that they should have performed a quantitative analysis, writing that a goodwill impairment "should have been recognized during the three months ending September 30, 2022." ¶¶93, 99, 102, 104. Performing the quantitative test belatedly, Defendants stated that using the income approach, based on the present value of estimated future cash flows, what Defendants called "unobservable inputs," a $62 million goodwill impairment charge was recognized for the restated 3Q22 financial statements. ¶103. Defendants specifically noted that decline in the fair value of the legacy reporting unit was due to increases in the discount rate, a metric Defendants monitored. ¶103. Further, in revising the 4Q22 goodwill

8

impairment, Defendants noted that the triggering event was, as it was as of June 1, 2022, a sustained decrease in Wheels Up's stock price. ¶105.

In the 2022 10-K, also filed on March 31, 2023, Defendants admitted their November 9, 2022 statement that its internal control over financial reporting was effective as of September 30, 2022, was false when issued. ¶¶92, 106. Defendants stated that as of September 30, 2022, Wheels Up did not maintain effective internal controls over financial reporting. ¶106.

On the March 31, 2023 news, Wheels Up's share price fell 11.37%, damaging investors.

## III.    ARGUMENT

### A.    Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[6] This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In resolving a Rule 12(b)(6) motion, the court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the court must draw reasonable inferences in favor of the non-moving party. *In re NIO, Inc. Sec. Litig.*, 2021 WL 3566300, at *1 (E.D.N.Y. Aug. 12, 2021).

---

[6] Internal citations and quotations omitted unless noted.

In *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141 (2d Cir. 2021), reversing dismissal, the Second Circuit found that it is error for a district court to require a plaintiff to "show that [its] reading was superior to the court's own benign reading of those statements," even when the district court's reading was "not unreasonable." *Id.* at 147. The Circuit Court stated that a "competing explanation … is entitled to little weight … when evaluating a Rule 12(b)(6) motion." *Id.* at 146. Defendants are not "permitted to present their own version of the facts at the pleading stage[.]" because accepting such "facts" at the pleading stage "risks premature dismissals of plausible claims that may turn out to be valid after discovery." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

## B.    The Complaint Adequately Pleads Falsity

At its heart, this case is about Defendants' admitted failure to timely impair the Company's goodwill and its impact on its 3Q22 financial statements. Contesting the adequate pleading of falsity, Defendants simply ignore the pleaded facts. Nowhere in the falsity section of their brief do Defendants ***ever mention the word restatement***, nor do they cite to cases involving restatements. Defendants thus argue the complexity of a goodwill impairment they ***admit*** should have been taken as of September 30, 2022, by ignoring the circumstances and the law.

### 1.    The Company's 3Q22 Financial Statements Were Materially False

Defendants never mention the restatement in their falsity section, and thus do not (and cannot) contest that the restatement is an admission of the material falsity of the 3Q22 financial statements. Also on March 31, 2023, Defendants admitted that triggering events existed as of September 30, 2022, an admission that Defendants' 3Q22 statement about there being no triggering event was false when made.

While not an admission that it or its agents acted with fraudulent intent, a registrant's restatement of period financial statements constitutes an admission that those financial

10

statements were materially false when the registrant issued them. *See Lottery.com,*, 2024 WL 454298, at \*22 ("[a]lthough a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made") (citing cases); *Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 544 (S.D.N.Y. 2017) ("In light of comScore's admission that it must restate its financial statements, there can be no dispute that the SAC pleads numerous false and misleading misstatements with respect to revenue, revenue related metrics, and comScore's compliance with GAAP"). While a restatement, alone, concedes no wrongdoing, GAAP establishes and courts in this Circuit acknowledge that a restatement establishes material falsity. *See* ¶¶71-76.

Relying on *In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434 (S.D.N.Y. May 7, 2020), *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011), and *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019), Defendants dissemble, injecting complexity where none exists. In none of the cases on which Defendants principally rely did the registrants restate past financial results. This distinction is critical, rendering the cases on which Defendants rely wholly inapposite. In *GE*, for example, Defendants impaired goodwill in a current reporting period. They did not restate. They did not indicate that they should have impaired earlier, but rather that then-current circumstances caused them to evaluate the value of their goodwill and ultimately to impair. The Court dismissed because the complaints failed to plead with particularity that the circumstances that caused the registrants to impair in a current period existed in prior periods. *General Electric*, 2020 WL 2306434, at \*13. Here, Defendants themselves admit that the circumstances that should have caused them to impair goodwill by $62 million in 3Q22 existed as of September 30, 2022.

11

Defendants argue that their opinion regarding the amount of goodwill in Wheels Up's legacy business is a "complex accounting judgment," DBr 1, relying on *GE, Fait,* and *Aceto* to argue that Plaintiff merely "disagrees with [an] accounting judgment," merely presenting without evidence an argument that Defendants should have impaired goodwill "earlier than it did," and that Wheels Up was "not required to assume the worst and impair its goodwill before factors material to that assessment emerged." DBr 17-20 (quoting *Aceto*, 2019 WL 3606745, at *7-8). The Court will reject this attempted sleight of hand. Instead, it is Defendants themselves who state that Wheels Up should have impaired earlier. On March 31, Defendants stated that triggering factors existed as of September 30, 2022, which should have caused Wheels Up to impair ***as of that date***. ¶¶93, 99. Defendants admit that the factors material to finding triggering events, and a subsequent DCF analysis mandating an impairment, existed as of September 30, 2022, ¶93, and not that they emerged later. Defendants themselves admit, therefore, that their November 9, 2022 opinion of the amount of goodwill to book was materially false when issued.[7]

That Wheels Up restated its 3Q22 and fiscal year 2022 financial statements is not in dispute. ¶99. That Defendants admitted that triggering events existed as of September 30, 2022, that should have caused them to perform a quantitative evaluation and ultimately to impair goodwill as of September 30, 2022, is also not in dispute. ¶¶93,99. Defendants, ignoring the pleaded restatement, therefore, admit the material falsity of the Company's 3Q22 financial statements and that contrary to their affirmative statement on November 9, 2022, triggering events existed. As such, the Complaint adequately pleads material falsity.

---

[7] Ignoring again their own restatement, Defendants state that the 3Q22 10-Q statement that there were no triggering events "was true" and "entirely accurate." DBr 12, 19. This is patently false, as Defendants admitted in their 3Q22 10-Q/A. *See* ¶¶93, 99, 102.

**2. Even if This Court Ignores the Restatement, the Complaint Adequately Pleads the Falsity of Wheels Up's 3Q22 Financial Statements and the Statement of Fact that there Were No Triggering Events**

Defendants argue that their financial statements were opinions that are not adequately alleged as false. DBr 17-18. Defendants are wrong. An *Omnicare* analysis shows that their opinion of the amount of goodwill contained an embedded fact—a false statement about triggering events—which renders their opinion, recorded in the financial statements, materially false.

In *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), the Supreme Court stated that an opinion may be false when it contains "an embedded statement of fact" which is false. *Id.* at 185. Investors understand an opinion "to convey facts about how the speaker has formed the opinion," and that the opinion "fairly aligns with the information in the issuer's possession at the time." *Id.* at 188. If the real facts are different, "the opinion statement will mislead its audience." *Id.*

Defendants attempt to confuse through their cited cases, which, as discussed above, did not involve restatements, so in none did Defendants admit, as they do here, that their goodwill opinion was false when made. Even if this court ignores the restatement and finds in the face of observable facts that should have triggered analyses and impairment that goodwill is an opinion requiring an *Omnicare* analysis, falsity is adequately alleged. Defendants' opinion contained an embedded fact, and in this case an embedded fact that Defendants spoke aloud: there were no triggering events as of September 30, 2022. ¶73. Having heard that "fact," investors were reassured that the opinion "fairly align[ed] with the information in [Wheels Up's] possession at the time." *Omnicare*, 575 U.S. at 188. In fact, as Defendants admit, that embedded fact was false, omitting also that a DCF analysis they should have done conflicted with their opinion of the

13

amount of goodwill, ¶103, given falling stock prices, rising interest rates, and unobservable inputs that would have caused Wheels up to impair. Because these circumstances that caused Wheels Up to impair existed as of September 30, 2022, Defendants' opinion of how much goodwill to book as of September 30, 2022, is adequately pleaded as false.[8]

### 3.     The "Internal Controls" Statement is Adequately Alleged as False

Defendants admitted on March 31, 2023, that their internal controls over financial reporting were ineffective *as of September 30, 2022*. ¶93. Ignoring completely this fact, Defendants argue fraud by hindsight, citing inapposite cases. DBr 22. The Complaint adequately pleads the falsity of Defendants' November 9, 2022 internal control statement.

In the original 3Q22 10-Q, Defendants stated that its internal controls were effective. ¶92. In the March 31, 2022, 3Q22 10-Q/A, Defendants admitted not that Wheel's Up's internal controls were ineffective as of March 31, 2023, but that they were ineffective as of September 30, 2022, and specifically ineffective related to the "financial statement close process." ¶93.

Defendants' citation to *Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 314–15 (E.D.N.Y. 2023), is inapposite. In *Arora*, plaintiff argued that because Arora found its internal controls ineffective, they must have been ineffective earlier. In *Arora* the company did not admit that its internal controls over financial controls actually were ineffective earlier, as Defendants admitted here. ¶93. The internal control statement is adequately alleged as false.

---

[8] The language of *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 169–71 (2d Cir. 2023), strengthens the conclusion. In *De Carlo*, the Court stated that an opinion is false or misleading where "there is an accepted method for assessing whether the statement is true, but the statement is not justified by the accepted method and clearly contradicts the facts on which it purports to rest." *Id.* at 171. Here, the accepted method, as Defendants admitted on March 31, 2023, mandated a goodwill impairment ¶¶93, 99, 102.

14

### C.      The Complaint Adequately Pleads Scienter

To plead a "strong inference" of scienter under Section 10(b), a plaintiff must allege "facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020). Recklessness may be shown by allegations that defendants "knew facts or had access to information suggesting that their public statements were not accurate or failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). For a complaint to survive a motion to dismiss, it must allege facts from which "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). Crucially, the inference need not be "irrefutable" or of the "smoking-gun genre," or even the "most plausible of competing inferences." *Id.* "The court's job is not to scrutinize each allegation in isolation," but to consider whether the allegations holistically raise a strong inference of scienter. *Id.* at 326.

Defendants argue that the Complaint fails adequately to plead their scienter—that the cogent inference of their recklessness is less compelling than the inference that they were incompetent. As an initial matter, the Complaint's allegations wholly undermine the cogency of inferring Defendants' incompetence or even a mistake. Defendants knew the rules of performing goodwill analysis for impairment. Indeed, in 2Q22, Defendants found qualitative events requiring they perform a quantitative test to assess the value of the Company's goodwill. They performed that test, informing the market that the income approach they applied did not require impairment at that time. ¶¶56-57. That indicates that Defendants were focused on qualitative factors that would require them to evaluate the value of the Company's goodwill. Indeed, when

15

they disclosed 3Q22 financial results, Defendants stated affirmatively that they had examined qualitative factors, but none required a quantitative test. Defendants later admitted that observable factors existed as of September 30, 2022, that required them to perform the quantitative analysis. This eliminates incompetence as a cogent counter-inference.

It also eliminates mistake as a cogent inference. Taking Defendants at their word, they examined qualitative events that would trigger a full analysis, observable facts like plummeting stock price, flat operating margins, and materially rising interest rates. These objective facts as of September 30, 2022, required Defendants to perform a quantitative test. If, however, they actually examined for these qualitative events, then the objective facts at the time should have caused them to perform the quantitative analysis. In light of these facts—admissions—it is not cogent that Defendants made a mistake. Even if, however, this Court considers Defendants' incompetence of mistake a cogent counter-inference, because it is not more compelling than the inference of their recklessness, this Court should deny dismissal.

A defendant cannot "escape liability for fraud by closing his eyes to what he saw and could readily understand." *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, 20224 WL 1898512, at *11 (S.D.N.Y. May 1, 2024). In *Dentsply*, denying dismissal, the complaint contained no smoking gun, but "straightforward" allegations that defendants knew about product defects. *Id.* The court found the inference of knowledge cogent and compelling. Importantly, the court found that the competing inference, that defendants were "blissfully unaware," neither cogent nor compelling. *Id.* Further, the court held that if defendants "turned a blind eye … willful blindness is also enough" to establish scienter." *Id.*[9]

---

[9] *See also S.E.C. v. Roor*, 2004 WL 1933578, at *4 (S.D.N.Y. Aug. 30, 2004) ("conscious avoidance" sufficient to establish scienter); *S.E.C. v. Frank*, 388 F.2d 486, 489 (2d Cir. 1968) (defendant cannot "escape liability from fraud by closing his eyes to what he saw and could

16

The facts here are stronger than those in *Dentsply*. Here, the straightforward allegations not only show that Defendants knew about the falling stock price (and other factors such as rising interest rates and changes in the discount rate), but Defendants ***admit*** they knew about them. ¶¶3, 50, 78. Defendants were "willfully blind" and severely reckless.

Considered holistically, the Complaint pleads Defendants' severe recklessness. The same facts supporting a falsity finding support a scienter finding.[10] Defendants admitted in the restatement that the stock price decline, alone, was a triggering event mandating a quantitative analysis and a $62 million goodwill impairment as of September 30, 2022. ¶¶93, 99. Defendants admit that they "monitored and analyzed all qualitative factors … during Q3 2022." DBr 12. Supporting this admission, Defendants conducted a full qualitative analysis as of June 1, 2022, explained their reasoning for finding triggering events, and the results of the quantitative analysis. ¶¶56-57. In fact, the stock price decline ***after*** June 1 , 2022, was worse than in the period leading up to June 1, 2022. Wheels Up's stock price fell 56% from June 1-September 30, 2022, ¶66, far more than the 38% "sustained decline" leading up to June 1, 2022, that caused Wheels Up to recognize stock price decline as a triggering event as of June 1, 2022. ¶66; DBr 12.[11] Defendants' scienter, considered holistically, is adequately pleaded.

---

readily understand"); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of ... recklessness.").

[10] "Falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts." *Plumbers' Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 185 (S.D.N.Y. 2010).

[11] Defendants incorrectly state that Wheels Up's margins were in a "consistent decline" during 2Q22 leading up to June 1, 2022. DBr 12 n.7. This is wrong. In fact, Wheels Up's operating margins, while still negative, were steadily improving during 2Q22, and then flattened out in 3Q22. ¶70.

17

Defendants make a number of arguments in response to the straightforward pleading of scienter. None lead to or contribute to an inference more cogent and compelling than that created by the Complaint's allegations.

Defendants argue that they had no scienter for the value they booked for goodwill in 3Q22 because it was a "judgment based on other judgments," DBr 11, and no allegation in the Complaint undermines their judgment. But yet again, Defendants ignore their own compelling admissions and knowledge. Defendants not only restated the amount of goodwill booked in 3Q22 by $62 million, ¶99, they admit that they should have known about and recognized the triggering event of falling stock prices during 3Q22, and should have taken the impairment as of September 30, 2022. ¶¶93, 99, 102, 104.[12] Taken together with their admitted knowledge of how to conduct both qualitative and quantitative analyses, and their specific sensitivity to the impact of falling stock prices on goodwill, and their knowledge of rising interest rates and their negative impact on the discount rate, ¶¶3, 50, 78, Defendants' failure to recognize a triggering factor and to impair was severely reckless, and not a simple mistake, and scienter for the false goodwill number booked is adequately pleaded. *See Dentsply*, 20224 WL 1898512, at *11 (refusal to see the obvious supports scienter finding).[13]

Arguing that the inference of incompetence or mistake is more compelling, Ds assert that a finding of scienter is implausible because no reason exists for them to have postponed

---

[12] Defendants repeatedly mention a year-over-year revenue increase in 3Q22. *See* DBr 6, 12 19. The reference, with no citation to the Complaint, is a red herring. Defendants do not mention revenue increases or decreases as a factor in the goodwill analysis as of June 1, 2022, September 30, 2022, December 31, 2022, or in the restatement. Further, Defendants omit that given Wheels Up's strikingly negative margins, more revenue meant greater losses.

[13] Even as they admit that the stock price decline, alone, should have caused Defendants to impair in the 3Q22 10-Q, Defendants attempt to downplay this admission by stating that stock prices in comparable sectors had also been in decline. DBr 12. This statement is misleading, as Wheels Up's stock price decline and rate greatly outpaced those sectors. ¶65.

impairing goodwill from November 2022, when they disclosed 3Q22 results, to March 31, 2023, when they admitted material falsity. DBr 13. Defendants are wrong. In *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), reversing dismissal, the Second Circuit dealt with this exact issue. Defendants in *SAIC* argued that it was "implausible" for Defendants to conceal misconduct for a short period of time, because the benefits of such misconduct would be low. *Id.* at 96–97. Rejecting this argument, the Court stated that the "argument confuses expected with realized benefits." *Id.* At 97 (quoting *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008). The *SAIC* court stated that it was equally cogent and compelling that SAIC would have more time before its misconduct was revealed, and that "the benefits of concealment might exceed the costs." *SAIC*, 818 F.3d at 97. Similarly here, Defendants might have thought they could forestall goodwill impairment indefinitely, or for some period of time important to them. It does not matter in this Circuit, because it is equally compelling here, as in *SAIC*, that Defendants acted at least severely recklessly.[14]

Defendants next argue that Plaintiff relies exclusively on the fact of the restatement to allege scienter. DBr 14-15. Defendants misapprehend the Complaint. As noted above, the stock price decline, alone, was a triggering event mandating a quantitative analysis and a $62 million goodwill impairment as of September 30, 2022, ¶¶93, 99, 102, 104, and Defendants admit that they "monitored and analyzed all qualitative factors … during Q3 2022." DBr 12. Supporting this admission, Defendants conducted a full qualitative analysis as of June 1, 2022, explained their reasoning for finding triggering events, and the results of the quantitative analysis. ¶¶56-57.

---

[14] Defendants repeatedly state that the $62 million in restated 3Q22 goodwill impairment was just a subset of the $132 million 4Q22 goodwill impairment taken on March 9, 2022. DBr 13, 15. This is false. The $132 million impairment on March 9, 2023, became a $180 million goodwill impairment in the restatement published on March 31, 2023, a $48 million increase in total goodwill impairment. ¶¶99.

In fact, the stock price decline **after** June 1, 2022, was worse than in the period leading up to June 1, 2022. Wheels Up's stock price fell 56% from June 1-September 30, 2022, ¶66, far more than the 38% "sustained decline" leading up to June 1, 2022, that caused Wheels Up to recognize stock price decline as a triggering event as of June 1, 2022. ¶¶56-57; DBr 12. Defendants' argument fails, as Plaintiff does not rely only on the fact of a restatement to establish scienter.

Further, Defendants' reliance on the *GE* case to assert a more compelling counter-inference fails. DBr 15-16 Defendants argue that *GE*, a case of greater financial magnitude, was dismissed because plaintiff failed to plead that defendants had access to information "suggesting that their public statements were not accurate." DBr 15 (quoting *GE*, 2020 WL 2306434, at *15). As noted above, in *GE*, the registrant did not restate and plaintiff failed to allege with particularity that it should have restated in a prior period. ***Those are not the facts here***. Here, Defendants have admitted that the information they knew as of September 30, 2022, should have caused Wheels Up to perform a quantitative analysis and ultimately to impair by $62 million as of September 30, 2022, ¶¶93, 99, 102, 104, and thus should have known that their public statements were not accurate. Indeed, Defendants admit that they had access to and examined the information constituting qualitative events as of September 30, 2022. *GE* is inapposite.[15]

Finally, with respect to internal controls related to financial reporting, which Defendants stated, on March 31, 2023, were ineffective as of September 30, 2022, ¶106, Defendants admit scienter, just as they did with respect to the triggering factors and the amount of goodwill booked. Indeed, the ineffectiveness admission supports a strong inference of scienter, especially considering that Defendants both knew how to and actually did undertake and complete both a quantitative and qualitative analysis as of June 1, 2022. ¶¶56-57. The at least equally compelling

---

[15] Defendants cite cases along with *GE* that also do not involve restatements. DBr 16.

20

inference from the admitted ineffectiveness of internal controls is that the March 31, 2023, ineffectiveness claim is an attempt to cover up Defendants' reckless failure to impair on November 9, 2022. The ineffectiveness claim is an attempt to make it appear as if there was some aspect of the impairment process as of September 30, 2022, that Defendants were unaware of because of internal controls issue, when in fact Defendants had exhibited that they knew exactly how to carry out the impairment analysis, and recklessly failed to do so.

The complaint adequately pleads scienter.

### D.    The Complaint Adequately Pleads Loss Causation

Defendants argue that the Complaint fails to plead loss causation because all of the information was public and no corrective disclosure caused the stock price drop. DBr 23-24. Defendants simply ignore the "mirror image" correction of Defendants' opinions of the amount of goodwill and that there were no triggering events as of September 30, 2022, both of which were admitted as false and corrected in the March 31, 2023 restatement, causing Wheels Up's stock price to materially fall. ¶107. Further, Defendants' "truth-on-the-market" argument, that investors should have known those opinions were wrong when they were issued on November 9, 2022, ignores that investors reasonably relied on these opinions, and further that Defendants admit that the goodwill analysis involves "unobservable inputs" to which no investor had access. Finally, Defendants argue a failure to disaggregate. As the Second Circuit has held, however, disaggregation is not necessary at the pleading stage. Loss causation is adequately pleaded.

A complaint adequately pleads loss causation if "the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016). A corrective disclosure need not be a "mirror image" of the misstatement or omission, "tantamount to a confession of fraud," but must merely allege that "the 'truth' about the company's underlying condition, when revealed, cause[d] the 'economic

21

loss.'" *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010). "Loss causation is a fact-based inquiry that [g]enerally is a matter of proof at trial and not to be decided on a motion to dismiss." *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 149–50 (S.D.N.Y. 2021) (cleaned up). *See also In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 253 (S.D.N.Y. 2007).

The Complaint alleges the falsity of Wheels Up's November 9, 2022, statement that there were no triggering events as of September 30, 2022. ¶¶88-89. The Complaint further alleges the falsity of the amount of legacy reporting unit goodwill booked in the 3Q22 financial statements. ¶¶90-91. The March 31, 2023 corrective disclosure explicitly corrected these exact misstatements. Defendants admitted that there were triggering events as of September 30, 2022, ¶103, and Defendant further restated the 3Q22 financial statements, recognizing a $62 million impairment as of September 30, 2022, and increasing 3Q22 net loss. ¶102. On this news, Wheels Up's stock price fell materially on the next trading day. ¶107. These "mirror image" disclosures suffice to plead loss causation. *See In re Metawave Commc'ns Corp. Sec. Litig.*, 629 F. Supp. 2d 1207, 1223–24 (W.D. Wash. 2009) (share price drop after restatement correcting earlier misstatement pleads loss causation); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 975 (N.D. Cal. 2010) (stock price drop following restatement pleads loss causation).

Next, Defendants argue that on March 31, 2023, they also filed the 2022 10-K, disclosing "additional details" that could have caused the stock price decline, insisting the Complaint is insufficient for failing to disaggregate the impact of those additional details from the 3Q22 restatement. DBr 24. Defendants further claim the Complaint fails to allege that Wheels Up's stock price suffered a "sharp drop upon the restatement." DBr 24. Both arguments fail.

22

Disaggregation is not an issue at the pleading stage. In *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014), reversing dismissal, the Circuit Court held that "at the motion to dismiss stage, the complaint need not rule out all competing theories for the drop in stock price; that is an issue to be determined by the trier of fact on a fully developed record, *id.* at 233 (cleaned up) (quoting *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 343 (S.D.N.Y. 2010) ("neither *Lentell* nor *Dura* burden plaintiffs with pleading that no other possible event could have caused plaintiffs' losses[.]").

Nor does Defendants' "sharp drop" argument survive scrutiny. The Complaint plainly alleges a "sharp" 10.4% decline in Wheels Up's stock price on March 9, 2023 ¶96. Further, the Complaint alleges a "sharp" 11.37% drop in Wheels Up's stock price following the restatement and Defendants' correction stating that there was actually a triggering event as of September 30, 2022. ¶107. The cases Defendants cite do not involve allegations of such drops, and are distinguishable. In *In re Sec. Cap. Assur. Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 599 (S.D.N.Y. 2010), the complaint only alleged "a slow, steady decline … not a sharp drop resulting from the announcement of concealed facts." In *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 714–15 (S.D.N.Y. 2013), there was no sharp decline ("minimal decline in value"), and Defendants admit that, unlike the allegations here, there was no allegation in *Westland* of a sharp decline after disclosure. *See* DBr 24.

Finally, Defendants make an opaque argument that investors were not allowed to rely on Defendants' false statements, and that the truth was on the market such that investors knew that there were triggering events as of September 30, 2022. *See* DBr 23. Defendants' argument fails.

Contrary to the implication from Defendants' argument, investors were allowed to rely on Defendants' false statement about no triggering factors, and on Defendants' false financial

23

statements issued on November 9, 2022. In *Omnicare*, the Supreme Court stated that "if a registration statement omits material facts about the issuer's (a) inquiry into or (b) knowledge concerning a statement of opinion, and if those facts conflict with **what a reasonable investor would take from the statement itself**, then § 11's omissions clause creates liability." *Id.* at 189. This means unequivocally that investors may rely on opinions. Thus, in the absence of Defendants stating the omitted facts, here that triggering events existed requiring a quantitative analysis, investors could rely on Defendants' statements, and the truth was not on the market.[16]

In any case, investors did not have all of the information necessary to conclude the existence of triggering events, while Defendants did. That analysis involved analyzing what Defendants called "unobservable inputs." ¶103. Among the information unavailable to investors were future operating margins, discount rates, and cost of capital. ¶¶58 & n.6, 64.[17] The truth was not on the market.

### E. The Complaint Adequately Pleads a Section 20(a) Violation

Section 20(a)'s plain language requires a showing of (1) a primary violation by the controlled person; and (2) control of the primary violator by the targeted defendant. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). The Complaint sufficiently alleges both a primary violation of Rule 10b-5 and the Individual Defendants' control over Wheels Up, the power to "direct or cause the direction of the management and policies of" Wheels Up "by contract, or otherwise." *In re Alstom SA*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005). That suffices to state a Section 20(a) claim.

---

[16] Defendants' reliance argument has nothing to do with loss causation.

[17] Defendants' citation to *City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 69 (2d Cir. 2012), is thus unavailing. In *City of Omaha* plaintiffs conceded that there were no "unobservable inputs." Further, Defendants themselves call their statement a "complex accounting judgment." DBr 1.

Defendants argue that Section 20(a) imposes an affirmative burden to plead the Individual Defendants' culpable participation. While some courts in this District have required plaintiffs affirmatively to plead culpable participation, no such requirement exists. The leading Second Circuit case, *First Jersey*, imposes no culpable participation pleading requirement. Rather, the Second Circuit, discussing ***a judgment*** of the court below—and not a pleading—wrote of establishing a *prima facie* case at summary judgment or trial, requiring a showing of control and "in some meaningful sense" culpable participation in the fraud. *Id.* Discarding the culpable participation language, the Second Circuit then stated only that once a plaintiff establishes control it had shown a prima facie case and the burden shifted to the defendant to show good faith. *Id.* The burden cannot be higher for pleading a §20(a) claim that it is for proving one at trial. Rather, a complaint that pleads control under Fed. R. Civ. P. 8(a) satisfies the §20(a) pleading requirement. Requiring "culpable participation" at the pleading stage – not to mention a heightened pleading thereof -- defies the Exchange Act's plain language, misreads *First Jersey*, and wrongly requires Plaintiffs to plead what is, by statutory command, defendants' burden to disprove. This Court should, therefore, reject Defendants' invitation to require a pleading of culpable participation at the pleading stage.

Even if the Court determines that Plaintiffs are required to allege culpable participation, it should nevertheless conclude that the Complaint adequately alleges a Section 20(a) claim against the Individual Defendants. For the reasons stated above, Defendants knew the evaluation GAAP required, knew the existing facts, and claim to have performed the very qualitative analysis that required a quantitative analysis at that time. Given their actual participation and recklessness, they were culpable participants.

## IV.    CONCLUSION

For the above-stated reasons, the Court should deny Defendants' Motion to Dismiss in its entirety.

Dated:  August 14, 2024

Respectfully Submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
jgoldberg@rosenlegal.com
ghaklay@rosenlegal.com

*Counsel for Lead Plaintiff and the Class*

26