# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 23-CV-02900 (RER) (VMS)

THE LEE GOODMAN TRUST

VERSUS

WHEELS UP EXPERIENCE INC., KENNETH DICHTER, AND TODD SMITH

## MEMORANDUM & ORDER

**RAMÓN E. REYES, JR., District Judge:**

Plaintiff brings this securities fraud action under sections 10(b) and 20(a) of the Securities and Exchange Act of 1933 ("Exchange Act"), 15 U.S.C. § 78j(b), and Securities Exchange Commission Rule 10b-5, alleging that defendants deceived a putative class of securities holders by inflating the value of company securities through quarterly reports that failed to disclose $62 million of financial losses and vulnerabilities. Plaintiff claims that subsequent reports acknowledging defendants' error amount to the prior reports being false and misleading and are the cause of putative class members' financial loss.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. After carefully reviewing the record, and for the reasons set forth herein, the Court GRANTS defendants' motion.

## **BACKGROUND**

I. Factual Background

Plaintiff The Lee Goodman Trust ("Plaintiff" or "The Trust"), purchased securities from Wheels Up Experience, Inc. ("Corporate Defendant" or "Wheels Up"), an aviation services company incorporated in Delaware in 2013 and publicly traded on the New York Stock Exchange since July 14, 2021. (ECF No. 41 ("Second Am. Compl.") ¶¶ 11–13, 22). The Trust sues individually and "on behalf of persons or entities who purchased or otherwise acquired publicly traded Wheels Up securities between November 9, 2022, and March 31, 2023." (*Id.* ¶ 1). Defendant Kenneth Dichter ("Dichter") founded the company and served as its chief executive officer ("CEO") and chairman of the board of directors from the company's inception until May 9, 2023. (*Id.* ¶ 13). Defendant Todd Smith ("Smith") (together with Dichter, "Individual Defendants," and together with Wheels Up, "Defendants") became the company's chief financial officer ("CFO") on June 30, 2022. (*Id.* ¶ 14). On May 9, 2023, Smith became the interim CEO, while remaining as CFO. (*Id.*).

As a publicly traded company, Wheels Up is regulated by the Securities Exchange Commission ("SEC") and subject to the Generally Accepted Accounting Principles ("GAAP") in its preparation of financial statements. (*Id.* ¶ 32). The Financial Accounting Standards Board ("FASB") creates Accounting Standards Codification ("ASC"), which, along with SEC rules and interpretive releases, form authoritative GAAP. (*Id.* ¶ 32). When a public company acquires an asset, it must report each "goodwill," meaning a measure of "the excess of the purchase price over the value of identifiable assets acquired and liabilities assumed in a business combination." (*Id.* ¶ 33). SEC registrants must disclose

changes in goodwill in each reporting period, and must test goodwill for "impairment," *i.e.*, a determination of whether an acquired asset market value has dropped below the value originally recorded. (*Id.* ¶¶ 33, 36, 45). The SEC requires such testing to be conducted annually, but a company must test for impairment more frequently if there is a "triggering event" that would "more likely than not reduce the fair values" of an acquisition. (*Id.* ¶¶ 36–38). Such events include a "[d]ecline in market capitalization below book value." (*Id.* ¶ 39). A company first conducts a qualitative assessment to determine whether it needs to also conduct a quantitative assessment but may bypass the qualitative assessment and voluntarily conduct the quantitative assessment. (*Id.* ¶ 41). Long-lived assets, which are tangible or intangible resources that a company uses in its regular operations, are tested only if there is some indication that their cost exceeds their value, and the value is unrecoverable. (*Id.* ¶¶ 46–47).

Wheels Up acquired Delta Private Jets on January 17, 2020, and Air Partner LLC on April 1, 2022. (*Id.* ¶¶ 25, 27). The company performed its annual impairment tests on October 1 of each year and annually reported the results. (*Id.* ¶¶ 36, 49). It conducted annual impairment analyses in 2019 and 2020, and, in response to triggering events of (1) COVID-19 and (2) a "sustained decrease" in share price and a "decline in [] margins," also conducted interim impairment tests on April 30, 2020, and December 15, 2021. (*Id.* ¶ 51). Wheel Up stock continued to decline in 2022, falling 38% from $4.19 to $2.60, which triggered "the company to test its long-lived assets for recoverability." (*Id.* ¶ 56). Although "goodwill is never tested for recoverability", Wheels Up "concluded that the carrying value of the Company's goodwill may not be 'recoverable' and performed an interim quantitative goodwill impairment test," still finding no impairments. (*Id.*) Plaintiff

alleges that Wheels Up not only used the wrong criteria to test but it did not initially disclose that the interim analyses only tested one goodwill, as opposed to each goodwill individually, and only later disclosed this partial assessment in their September 30, 2022, quarterly report. (*Id.* ¶¶ 57-59). Plaintiff also claims that Dichter and Smith certified these reports while knowing of the company's vulnerability under rising interest rates. (*Id.* ¶¶ 57, 59, 63). Wheels Up stock continued to decline between June 1, 2022, and September 30, 2022, dropping 56% from $2.60 to $1.45, alongside a 40.7% market capitalization fall during the third quarter of 2022. (*Id.* ¶¶ 66–67). According to Plaintiff, these declines should have triggered interim testing but did not. (*Id.* ¶ 69). In the November 9, 2022, third quarterly report, Wheels Up reported a triggering event and related analyses but again concluded there was no impairment. (*Id.* ¶¶ 73, 90). In that report, Dichter and Smith also confirmed that the company's disclosure controls and procedures were effective. (*Id.* ¶ 92).

On March 9, 2023, Wheels Up reported a total goodwill impairment of $132 million. (*Id.* ¶ 94). On March 31, 2023, Wheels Up restated its 2022 third quarter financials, recognizing that "goodwill impairment charges of [] $62.0 million should have been recognized by the Company during the three months ended September 30, 2022" in its 2022 third quarter report. (*Id.* ¶ 99). Defendants also re-evaluated their prior assessment of internal controls and concluded that they had "not maintain[ed] effective disclosure controls and procedures." (*Id.* ¶ 93). Plaintiff claims that through the restatement, "Defendants admitted that the very triggering events they had tracked or should have tracked closely since no later than June 1, 2022, including decreasing stock price, negative operating margins, rising interest rates, and a rise in discount rate [] existed as

of September 30, 2022," and their failure to impair goodwill as of September 30, 2022, meant that the third quarter statement overstated both goodwill and total equity by $62 million each. (*Id.* ¶ 76, 81, 87, 89, 99). Plaintiff alleges that Dichter and Smith were "directly or indirectly involved in drafting, producing, reviewing and/or disseminating" false and misleading statements about the company's performance that caused Plaintiff major financial loss, and they were "directly or indirectly involved in the oversight or implementation of the Company's internal controls." (*Id*. ¶¶ 2, 14–16).

II. Procedural History

The Trust filed its complaint on April 19, 2023 (ECF No. 1), followed by an amended complaint on February 6, 2024 (ECF No. 35), and the operative second amended complaint on June 7, 2024 (Second Am. Compl.). On September 19, 2024, Defendants filed a 12(b)(6) motion to dismiss for failure to state a claim. (ECF No. 46, 46-1 ("Mem."). Plaintiff opposed (ECF No. 47 ("Opp'n"), and Defendant replied (ECF No. 46-10 ("Reply"). The case was reassigned to the undersigned on November 18, 2024. (Order dated 11/18/2024).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S., at 678. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a

sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a motion to dismiss, a court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013). Allegations that "are no more than conclusions [ ] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

To state a claim for relief under section 10(b) and SEC Rule 10b-5, "a plaintiff must allege that the defendant: '(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 463 (2d Cir. 2019) (citation omitted). "Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ('PSLRA') and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, No. 21-2698-CV, 2022 WL 17587853, at *2 (2d Cir. Dec. 13, 2022) (citation modified) (citation omitted). Such allegations must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (citation omitted).

## DISCUSSION

III. Plaintiff Adequately Pleads a Misleading Statement or Omission

Defendants argue that the Trust does not identify any actionable false or misleading statement because the statements in question are opinions or reasonable predictions based on Individual Defendants' professional judgments. (Mem. 23–24). Plaintiffs counter that the company's third quarter 2022 financial statement was materially false by stating that there had been no triggering events, and the restatement itself is an admission of that falsity. (Opp'n at 15–16). Further, Defendants' March 31, 2023, admission that their internal controls were ineffective as of September 30, 2022, renders their November 9, 2022, internal controls statement false. (*Id.* at 15). On this element, Plaintiffs are correct.

Under the PSLRA, allegations of a violation of the Exchange Act must specify "why the statement is misleading . . .". *Steamfitters Loc. 449 Pension Plan*, 21-2698-CV, 2022 WL 17587853, at *2 (2d Cir. Dec. 13, 2022) (summary order). The alleged misstatements or omissions must be material, meaning there is a "'substantial likelihood' that the statement or omission 'would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 532 (S.D.N.Y. 2024) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011)). On a 12(b)(6) motion, a court may not dismiss "on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (citation omitted). Additionally,

"[a]lthough a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *In re Lottery.com,* 715 F. Supp. 3d at 544 (collecting cases) (citation modified).

Here, Plaintiff adequately specifies why the statement in question is false or misleading. The Trust alleges that Wheels Up's 2022 third quarter statement was false or misleading because it did not determine that there was a triggering event, when indeed there was one, as Defendants later admitted through the restatement. (Second Am. Compl. ¶¶ 89–91). They also allege that the company's reassessment of its internal controls, declaring that they had actually been ineffective during the relevant period, means that the original statement that the internal controls were effective was a false statement. (*Id.* ¶¶ 92–93). While neither correction is "an admission of wrongdoing," both revisions necessarily render the initial statements as false or misleading. *See In re Lottery.com,* 715 F. Supp. 3d at 544. This is simply because, as Defendants admit, the prior assertions about goodwill impairment and effective controls were factually incorrect, regardless of whether Defendants did not realize it at the time. A later recognition that the company should have reported a $62 million impairment as of September 2022 strikes the Court as hardly immaterial, and certainly not "so obviously unimportant" that the Court could properly dismiss the complaint on those grounds. *See ECA*, 553 F.3d at 197.

Defendants' contention that the original statements were simply opinions and therefore not actionable is unconvincing. "[S]tatements of opinion are actionable misrepresentations or omissions in at least three situations: (1) when 'the speaker did not hold the belief she professed'; (2) when 'the statement of opinion contains embedded

statements of fact that are untrue;' and (3) when 'the statement omits information whose omission conveys false facts about the speaker's basis for holding that view and makes the opinion statement misleading to a reasonable investor.'" *In re Lottery.com,* 715 F. Supp. at 533 (citation omitted). Defendants' restatement that they should have reported impairment in the third quarter of 2022, and that their internal controls were ineffective refer to prior factual statements, not opinions. Contrary to the cases upon which Defendants rely, it is not Dichter's and Smith's allegedly incorrect *judgment* that renders the statements false or misleading; it is the inclusion of facts about goodwill impairment and internal controls in the earlier statements, followed by Defendants' later correction of those facts that necessarily demonstrates the 2022 third quarter "embedded statements of fact [were] untrue." (*See* Mem. at 25) (citing *In re Aceto Corp. Sec. Litig.*, No.18-cv-2425 (ERK) (AYS) 2019 WL 3606745, at *7 (E.D.N.Y. Aug. 6, 2019) (holding that plaintiffs did not plead any actionable misstatement or omission in an opinion about goodwill impairment, but not in the context of a defendant's restatement recanting prior factual assertions)). Defendants' original statements, even if they are opinions, embedded these facts that Defendants themselves later corrected, and are therefore actionable. *Id.*

I. <u>Plaintiff Fails to Adequately Plead Scienter</u>

Where Plaintiffs cannot sustain their claim is on the element of scienter. Defendants argue that Plaintiff neither pleads motive and opportunity to commit fraud, nor proffers facts to support strong circumstantial evidence that Defendants benefited personally, deliberately engaged in illegal behavior, or failed in their duty to monitor relevant information about the company's worth. (Mem. at 16–17). Applying Defendants' later accounting judgments in hindsight to prove they deliberately defrauded securities

purchasers in their earlier assessments, Defendants contend, does not amount to scienter. (*Id.* at 21). Plaintiff maintains that Defendants did not simply make a mistake and cannot escape liability simply because they ignored objective plain sight facts that they later admitted should have triggered further impairment testing. (Opp'n at 21). The Court finds Defendants' arguments convincing, and Plaintiff's arguments unavailing.

To adequately plead scienter for securities fraud, a plaintiff must allege facts to show "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted). A "'strong inference' of scienter is one which is '*at least as likely* as any plausible opposing inference.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) (citation omitted); *see also Patel v. Koninklijke Philips N.V.*, 21-CV-4606 (ERK) (MMH), 2024 WL 4265758, at *4 (E.D.N.Y. Sept. 23, 2024) ("To qualify as strong, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.") (citation modified). Such inference may be established by "facts '(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Pontiac*, 752 F.3d at 184. "'Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud.'" *Patel*, 2024 WL 4265758, at *4 (citation omitted).

Defendants are correct that Plaintiff does not allege a "personal benefit" anywhere in its complaint. (Mem. at 17). Plaintiff's alternate path is to "plead scienter by identifying

circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Patel*, 2024 WL 4265758, at *4 (citation omitted); *accord Salim v. Mobile Telesystems PJSC*, 21-839-CV, 2022 WL 966903, at *1 (2d Cir. Mar. 31, 2022) ("Absent facts establishing motive or opportunity, the circumstantial evidence of conscious misbehavior must show highly unreasonable behavior that evinces an extreme departure from the standards of ordinary care.") (citation omitted) (citation modified). In the securities fraud context, this amounts to "conscious recklessness—*i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted).

Plaintiff fails on this route as well, with wholly conclusory allegations. Circumstantial evidence may include a showing that Defendants either "knew facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor." *Blanford*, 794 F.3d at 306. The Trust attempts to satisfy this by repeatedly alleging that Defendants "knew facts or had access to information" suggesting that their September 30, 2022, public statements were inaccurate. (*See* Second Am. Compl. ¶¶ 68, 72, 89, 91, 93). But such a realization in hindsight—as evidenced by Defendants' recognition of a goodwill impairment charge and a restatement that retroactively shifted some of the impairment to the earlier quarter—does not amount to intent to defraud *before* Defendants reassessed their analyses. As Defendants explain "courts in this district have rejected fraud-by-hindsight allegations of scienter simply based on the fact that there was a restatement." (Mem. at 20) (quoting *In re Plug Power, Inc. Sec. Litig.*, No. 21 Civ. 2004 (ER), 2022 WL 4631892, at *17 (S.D.N.Y.

Sept. 29, 2022). Such a claim might succeed only if a plaintiff pleads that a defendant had access to contrary facts at the time the alleged misstatements were made and "specifically identif[ies] the reports or statements containing this information." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 372 (E.D.N.Y. 2013). Plaintiffs make no such allegations.

Instead, the complaint shows that Defendants were regularly monitoring and analyzing the company's value as required. (Second Am. Compl. ¶¶ 49–59, 70, 73). Allegations that Defendants used the "wrong criteria" (*id.* ¶ 75) or committed other GAAP violations cannot stand on their own without "corresponding fraudulent intent, separate and apart from the accounting violations themselves." *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 239 (S.D.N.Y. 2020) (citation modified) (citation omitted); *accord. Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Only where such allegations are coupled with evidence of corresponding fraudulent intent . . . might they be sufficient") (citation modified) (citation omitted). Absent the element of scienter, Plaintiff fails to state a claim for relief under section 10(b) and SEC Rule 10b-5 and Count I is therefore dismissed.[1]

## IV. Without an Underlying Violation of Section 10(b), Plaintiff Cannot State a Claim Under Section 20(a)

"Section 20(a) of the Exchange Act provides that individual executives, as 'controlling person[s]' of a company, are secondarily liable for their company's violations of the Exchange Act." *Blanford*, 794 F.3d at 305 (citing 15 U.S.C. § 78t(a)). Dichter's and

[1] While the parties' briefs argue the remaining elements of reliance and causation, the Court declines to address these in light of Plaintiff's failure on scienter.

Smith's liability under section 20(a), then, would only be "derivative of liability under some other provision of the Exchange Act." *In re Lottery.com*, 715 F. Supp. 3d at 561; *accord. Nutriband, Inc. v. Kalmar*, No. 19-CV-2511 (NGG) (SJB), 2020 WL 4059657, at *12 (E.D.N.Y. July 20, 2020). As the Court determined Plaintiff's failure to state a section 10(b) violation, this claim meets the same fate. Additionally, Defendants correctly contend that even if Plaintiff's section 10(b) claim were to succeed, they make no specific allegations against Individual Defendants other than Dichter and Smith fulfilled their expected roles as CEO and CFO, with all the associated decision-making powers. (Mem. at 31; *see* Second Am. Compl. ¶¶ 2,14–17). Count II is therefore dismissed.

## CONCLUSION

For the reasons set forth above, the Court grants Defendants motion to dismiss (ECF No. 46). The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: July 15, 2026
Brooklyn, New York